1  E. ROBERT SORACCO
   121 South Hope Street, Unit 506
2  Los Angeles, California 90012
   Telephone: (213) 268-1825
3  Email: erobert1@hotmail.com

4  Creditor *in Pro-pia persona*

5

6              **UNITED STATES BANKRUPTCY COURT**

7              **CENTRAL DISTRICT OF CALIFORNIA**

8                    **LOS ANGELES DIVISION**

9  In Re:                            | Chapter 7

10 BRAVO, Patricia Del Carmen        | Case No.: 2:24-bk-16132-DS

11        *Debtor.*                   | Adv. Proc No. ADV#: 2:24-01277

12 _____    | **MOTION FOR SUMMARY**
                                      | **JUDGMENT**
13 EDMUND ROBERT SORACCO             |
                                      | PLAINTIFF'S STATEMENTS OF
14        *Plaintiff*                 | UNCONTROVERTED FACTS AND
                                      | CONCLUSIONS OF LAW
15        *vs.*                       | PURSUANT TO 11 USC§523(a)(2)(A);
                                      | §523(a)(4); §727(a)(4); 523 & 727 *et seq.*
16 BRAVO, Patricia Del Carmen,       |
                                      | Hearing Date: 06/17/2025
17        *Defendant.*               | Hearing Time: 1:00 PM
                                      | Hearing Place: US Cent District Ct.
18
                                      |
19 _____    |

20

21

22

23

24              **Before Honorable: Deborah J. Saltzman**
                    **United States Bankruptcy Judge**

25                              1
   **MOTION FOR SUMMARY JUDGMENT - 2:24-BK-16132-DS – ADV#: 2:24-01277-DS**

## <u>**TABLE OF CONTENTS**</u>

|                                                              | Page |
| I.    INTRODUCTION…………..……………………………………… | 2 |
| II.   BRIEF INTRODUCTION OF UNCONTROVERTED FACTS…………………………………………………………… | 2 |
| III.  JURISDICTION…………………………………………….. | 5 |
| IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT………. | 5 |
| V.    ARGUMENT…………………………………………….. | 7 |
| VI.   PRAYER…………………………………………………… | 11 |

# **TABLE OF AUTHORITIES**

## **CASES**                                                                                    **Pages**

*Anderson v. Liberty* Inc., 477 U.S. 242, 255 (1986)……………….…………...5

*Avalos v. Baca*, 596 F.3d 583, 587 (9ᵗʰ Cir. 2010)……………….…………..5

*Bartenwerfer v. Buckley*, 143 S.Ct. 665, 214 L.Ed.2d 434 (02/22/2023)……...8

*Field v. Mans*, 516 U.S. 59, 61 (1995)……………………………….…7, 9, 10

*Goehring v. Chapman University*, 121 Cal. App. 4th 353 (2004)…………….10

*Grogan v. Garner*, 498 U.S. 279 (1991)………………………………..5, 6, 7

*Hinesley v. Oakshade Town Center*, 135 Cal. App. 4th 289 (2005)……… …..10

*In re Britton*, 950 F.3d 602, 604 (9ᵗʰ Cir. 1991). …………………………….1

*In re Bocchino*, 504 B.R. 403 405 (Bankr. M.D.Pa.2013)………………...…7

*In re Brown*, 217 B.R. 857, 862 (S.D. Cal. 1998……………………………10
………

*In re Kong*, 239 B.R. 815, 826 (9ᵗʰ Cir. B.A.P. 1999)…………………………8

*In re Nourbakksh*, 67 F,3d 798, 800 (9ᵗʰ Cir. 1995)…………………………. 6

*Lucido v. Superior Court*, 51 Cal. 3d 335 (1990)……………………………5, 6

*Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1995)…….6

*Nissan Fire & Marine Ins., Co., Ltd. v. Fritz Cos., Inc.*, 210 F3d 1099,
1102 (9ᵗʰ Cir. 2000)………………………………………………………….5

*Ribi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9ᵗʰ Cir. 1988)………………..6

*Segal v. American Tel. Co.*, 606 F2d 842, 845 (9ᵗʰ Cir. 1979)……………….6

*Stern v. Marshall*, 564 U.S. 462 (2011)……………………………………...5

*Zutrau v. Zutrau*, 563 B.R. 431 (N.D. Mass. 2017)……………………………9

## FEDERAL STATUTES

11 U.S.C. § 523(a)(2)(A)……………………………………...…1, 6, 7, 8

28 U.S.C. § 1334(b)……………………………………………….…..5

28 U.S.C. § 1409(a)……………………………………………….…..5

28 U.S.C. § 157(b)(2)(I)……………………………………………….5

28 U.S.C. § 1738…………………………………………………...…..6


**RESTATEMENT** (SECOND) TORTS §546, 548A………………………...10


### RULES

FRBP 7001………………………………………………………………….2

FRBP 56(c)…………………………………………………………………5

FRBP 7056………………………………………………………………5


### STATE COURT PROCEEDINGS

Statement of Decision ……………………………………………………..5
**EXHIBIT F**

Final Amended Judgment, 01/19/2018……………………………………10
**EXHIBIT G**

## I.    **INTRODUCTION**

Plaintiff Edmund Robert Soracco respectfully moves this Court for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7001 and applicable local rules. Plaintiff seeks a determination that the debt owed by Defendant Patricia Del Carmen Bravo ("Defendant") is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) because the Defendant obtained money, property, or credit by means of false representations. As detailed below, there is no genuine issue of material fact regarding (1) the Defendant's false representations, (2) the Defendant's knowledge that such representations were false, (3) the Defendant's intent to deceive, (4) Plaintiff's justifiable reliance on those representations, and (5) the proximate damage sustained by Plaintiff.

**Plaintiff respectfully requests that the Court find**:

(A) That the debt owed by Defendant Patricia Del Carmen Bravo from a final judgment entered by the Superior Court of the State of California, for the County of Los Angeles, Central District, in case number BC560739, dated September 19, 2018, is non-dischargeable under the provisions governing fraudulent conduct.

(B) That the Court determines whether the Defendant, a resulting trustee of Plaintiff's real property, had the authority to grant Bank of America ("BofA") permission to place a lien on Plaintiff's property, and whether BofA requested the consent from the Plaintiff, to place a lien on the Plaintiff's property without his knowledge.

## II.    **BRIEF INTRODUCTION OF UNCONTROVERTED FACTS**

In 1994, the Plaintiff entered into a lease agreement that included the first option to purchase a condominium located at 121 South Hope Street, Unit 506, Los Angeles, California 90012 (the "Property"). Before the first-year lease concluded in November 1995, Plaintiff opted to exercise the purchase option and began coordinating the purchase with the seller's realtor, Mr. Edward Rostamian of Old Century Realtors. By the middle of 1995, the plaintiff could not obtain a mortgage loan. The realtor, Mr. Rostamian, suggested getting someone to hold the title to the property, understanding that Plaintiff could make the mortgage payments and pay the costs of maintaining the property, such as HOA fees,

insurance, maintenance, and taxes. Consequently, Plaintiff approached Defendant, a family member and manager of Plaintiff's office, and explained the situation. Then, Plaintiff and Defendant met with Mr. Rostamian, and he explained the process to Defendant. The broker described the process to the Defendant, and shortly thereafter, the broker proceeded to get all the documentation ready while the Plaintiff secured the down payment.

**The 1995 Verbal Agreement**

In November 1995, the escrow closed. Plaintiff and Defendant agreed that Plaintiff would remove her from the title and loan obligation either when Plaintiff could secure a mortgage or when Plaintiff paid the mortgage in full, to which the parties agreed. Up to this point, it should be known that Defendant **never paid a cent towards the property at 121 South Hope Street** but used it for her own benefit in violation of her duties as a resulting trustee.

Within months of closing escrow in **November 1995**, Defendant had accumulated credit cards and lines of credit amounting to thousands of dollars based on the property. The Plaintiff learned of this fact during the trial at the Superior Court in 2017. As a "resulting trustee" for the property, Defendant failed to provide Plaintiff with any information regarding the mortgage status from its inception until the 2017 trial. Since the defendant is a family member and was the manager of the plaintiff's business, the plaintiff relied entirely on the defendant's assistance and never imagined that the defendant could commit fraud.

The state court found that the Defendant held title to the Plaintiff's property as a resulting trustee, for the benefit of the Plaintiff. Plaintiff asserts that the evidence unequivocally shows the Defendant made false representations when, on August 13, 2004, she obtained a home equity line of credit ("HELOC") for $150,000.00 from Bank of America for her own personal use, using the Plaintiff's real property as collateral without his knowledge or authorization. The defendant fully understood that her representations to the bank were false and nevertheless acted with the intent to deceive. **See Exhibit A, BofA's Equity Maximizer Agreement and Disclosure Statement on pages 13 of 67 entered on 10/24/24 in Motion for Relief from the Automatic Stay as to Real Property.**

As a direct result of the Defendant's actions, the Plaintiff, who justifiably relied on the representations made by the Defendant in 1995, (see Superior Court's Statement of Decision, dated January 5, 2018, (**See Exhibit F**), has suffered substantial losses and risks losing his property due to the Bank's foreclosure proceedings initiated by BofA's agents, Quality Loan Service Corporation ("QLSC") and Specialized Loan Servicing LLC., ("SLS") in April 2023. The Plaintiff paid **$20,508.64** to QLSC to avoid foreclosure, and again in May 2024, when foreclosure proceedings were halted due to the Defendant's bankruptcy proceedings as a direct result of her failure to repay the funds borrowed to acquire title to a condominium located at 880 First Street, Unit 404, Los Angeles, CA 90012, in 2004/2005, which she later sold in 2020 for a significant profit. Instead of repaying the Bank's loan, the Defendant filed for Chapter 7 bankruptcy. Consequently, her debt must be excepted from discharge. **See Exhibit B**, QLSC foreclosure notice and sale date 5/02/2023, and Plaintiff's cashier's check dated 04/13/2023 in the amount of $20,508.64 as payment to QLSC to prevent foreclosure of his property.

Moreover, the Plaintiff respectfully moves the Court to invalidate BofA's lien on his property because the Defendant used the Plaintiff's property as collateral without informing the bank or the beneficial owner, thereby obtaining the loan under false pretenses with the intent to deceive. However, BofA failed to perform its due diligence, which includes determining whether the borrower had the authority to transfer rights in the property and whether the beneficial owner consented to granting the property as collateral. Finally, it remains unclear whether the bank relied on the Defendant's financial situation or neglected to examine the Defendant's ability to repay the HELOC loan when it was granted on August 13, 2004, but for placing a lien on the Plaintiff's property. Thus, Plaintiff asserts that BofA's lien is an *ill-obtained* lien that must be invalidated pursuant to § 522(f) *et seq.*, of the bankruptcy code or any other applicable code the Court may apply.

Within months of the Bank of America granting the HELOC loan, the Defendant increased her mortgage obligation for her 880 West 1st Street, Unit 404, Los Angeles, CA 90012 condominium from $275,000.00 to $460,000.00 with Countrywide. **See Exhibit C**,

1  incorporated herein by this reference, is a true and correct copy of the Countrywide

2  Deed of Trust dated May 20, 2005.

3  ### III.    **JURISDICTION**

4  The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b).

5  The venue is proper under 28 U.S.C. § 1409(a). This proceeding is a core matter pursuant

6  to 28 U.S.C. § 157(b)(2)(I), and the Court has the constitutional authority to enter a final

   judgment on all of the claims asserted herein. See *Stern v. Marshall*, 564 U.S. 462 (2011).

7

8  ### IV.    **LEGAL STANDARD FOR SUMMARY JUDGMENT**

   **A. Summary Judgment**
9
   Summary judgment is appropriate when there is no genuine dispute regarding any
10
   material fact and the moving party is entitled to judgment as a matter of law. See Federal
11
   Rule of Civil Procedure ("FRBP") 56(c), made applicable by Federal Rule of Bankruptcy
12
   Procedure ("FRBP") 7056. In determining whether a genuine issue of material fact exists,
13
   evidence must be viewed in the light most favorable to the opposing party; the evidence of
14
   the non-moving party is to be believed, and all justifiable inferences are to be drawn in his
15
   or her favor. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Avalos v.*
16
   *Baca*, 596 F.3d 583, 587 (9th Cir. 2010). "The substantive law will identify which facts are
17
   material." *Anderson v. Liberty* Inc., 477 U.S. 242, 255 (1986). "Only disputes over facts
18
   that might affect the outcome of the suit under the governing law will properly preclude
   the entry of summary judgment." A factual dispute is genuine where the evidence is such
19
   that a reasonable finder could return a verdict for the non-moving party.
20
   The Plaintiff has the burden of persuasion at trial to prove its claim under the
21
   Bankruptcy Code section 523 by a preponderance of the evidence. See *Grogan v. Garner*,
22
   498 U.S. 279, 291 (1991); *Nissan Fire & Marine Ins., Co., Ltd. v. Fritz Cos., Inc.*, 210 F3d
23
   1099, 1102 (9th Cir. 2000) ("A moving party without the ultimate burden or persuasion at
24
   trial—usually but not always the defendant—has both the initial burden of production and
   the ultimate burden of persuasion on motion for summary judgment.").

25  //

**B.  Issue Preclusion Generally**

Issue preclusion applies to proceedings that seek exceptions from discharge. See *Grogan v. Garner*, 498 U.S. 279, 284 fn. 11 (1991). The doctrine of issue preclusion, also known as collateral estoppel, prevents the relitigation of issues "that were actually litigated and necessarily decided" in a prior proceeding. *See Ribi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988) (citing *Segal v. American Tel. Co.*, 606 F2d 842, 845 (9th Cir. 1979). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued. See *In re Nourbakksh*, 67 F,3d 798, 800 (9th Cir. 1995) (citing *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1995). Accordingly, California's issue preclusion law applies to this proceeding.

**C.  Issue Preclusion under California Law**

Under California law, "collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." See *Lucido v. Superior Court*, 51 Cal. 3d 335 (1990). California courts will apply collateral estoppel if the following requirements are met: (1) the issue to be precluded from relitigation must be identical to that decided in a former proceeding; (2) this issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as the party to the former proceeding. See *Lucido* at 341. "The party asserting collateral estoppel bears the burden of establishing these requirements."

**11 U.S.C. Section 523(a)(2)(A) requires the following:**

> (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, knew at the time the representation was false or made with gross recklessness as to its truth; (3) the debtor intended to deceive the creditor; (4) the creditor reasonably relied on the debtor's false representations; and (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.

6

## V.    <u>ARGUMENT</u>

### 1. Defendant Made False Representations

Plaintiff asserts that the Defendant's representations to BofA to borrow money were false as a matter of undeniable evidence. The undisputed record shows that Defendant provided materially inaccurate information regarding the true ownership of the real property located at 121 South Hope Street, Unit 506, Los Angeles, CA 90012. ("The Hope property"). A false representation that induces a creditor to extend credit satisfies the requisite factual basis under 11 U.S.C. § 523(a)(2)(A). False representations, such as those described in section 523(a)(2)(A), carry a scienter requirement, which requires that it be shown that an individual knowingly made false statements or representations. See *In re Bocchino*, 504 B.R. 403 405 (Bankr. M.D.Pa.2013). This requirement carries a heavy burden, as trying to prove that a person had actual knowledge that his or her statements were false is not an easy feat. To overcome this burden, Courts have found that a showing of gross recklessness is enough to satisfy the scienter requirement of section 523(a)(2)(A).

The Supreme Court has consistently been more lenient with the burden of proof required in bankruptcy cases dealing with exceptions to dischargeability of debts incurred by fraud. See *Grogan v. Garner*, 498 U.S. 279 (1991); see also *Field v. Mans*, 516 U.S. 59 (1995). In *Grogan v. Garner*, the Supreme Court held that "preponderance of the evidence standard, rather than clear and convincing evidence standard, applies to all exceptions from dischargeability of debts contained in 11 U.S.C. §523(a), including non-dischargeability for fraud provision.

### 2. Defendant Knew the Representations Were False

It is well established that for a debt to be non-dischargeable under § 523(a)(2)(A), the creditor must show that the debtor knew the representations were false when they were made. In the instant case, the evidence, including testimonial and documentary proof, demonstrates that the Defendant was aware of the falsity of the representations.

//

1        Either actual knowledge of the falsity of a statement or reckless disregard for its

2  truth satisfies the scienter requirement for non-dischargeability of a debt. See In re Grabau,

3  151 B.R. 227 (N.D. Cal. 1993); see also, *In re Kong*, 239 B.R. 815, 826 (9th Cir. B.A.P.

    1999).  Ninth Circuit authority has clearly held that the requisite scienter may be inferred

4  from a pattern of deceptive conduct. See *A Show of Gross Recklessness Satisfies Section*

5  *523(a)(2)(A)*, [Citation] (discussing how recklessness may be sufficient to establish

6  knowledge of falsity). See also *Bartenwerfer v. Buckley*, 143 S.Ct. 665, 214 L.Ed.2d 434

7  (02/22/2023). *Held*: Section 523(a)(2)(A) precludes Kate Bartenwerfer from discharging

    in bankruptcy a debt obtained by fraud, regardless of her own culpability. Pp. 671 - 676.

8  In the case at bar, the Defendant, to obtain a loan from BofA, willfully and knowingly

9  concealed the fact that the property for which she held title as a resulting trustee for the

10  benefit of Plaintiff was not her own property.

11      **3.  Defendant Made the Representations with the Intent to Deceive the Plaintiff**

        The fraudulent scheme was designed to deceive and mislead the Plaintiff, as

12  evidenced by the Defendant's deliberate misstatements and omissions to BofA in 2004 and

13  to the Plaintiff. The Plaintiff asserts that the Defendant's fraud against BofA was

14  intentional and knowingly false, and that the Defendant deliberately concealed the fact that

15  the Hope Street property was not hers and that she held the property's title in trust for the

16  benefit of the Plaintiff. Revealing this true fact to BofA would have prompted the Bank to

17  obtain the approval of the Plaintiff, as the beneficial owner, for BofA to place a lien.

18      The Defendant's deceptive act regarding the Plaintiff involved intentionally

19  concealing from him the fact that she obtained a HELOC loan from BofA in August 2004

20  without the Plaintiff's knowledge and authorization for 16 years. Compounding the gravity

    of the deception and concealment was the Defendant's recklessness in consenting to BofA

21  placing a lien on the Plaintiff's real property. Moreover, the Defendant willfully and

22  maliciously, with the intent to take the real property from the Plaintiff, refused to surrender

23  the title of the property as initially agreed. Additionally, the Defendant hired an attorney to

24  evict the Plaintiff from his own property. **See Exhibit D.**

25

Courts have consistently determined that evidence of purposeful deception supports a finding of intent to defraud. See _Zutrau v. Zutrau_, 563 B.R. 431 (N.D. Mass. 2017), where the Court emphasized that intentional use of false representations to obtain credit is sufficient to trigger § 523(a)(2)(A). Here, the Defendant's intent is manifested from the timing and context of the false representations and the circumstantial evidence showing a motive to secure favorable credit terms.

In this case, the Defendant sought to remove her mother from the title of the condominium located at 880 West 1st Street, Unit 404, Los Angeles, CA 90012, which her mother purchased on September 25, 2001, securing a $196,000.00 mortgage, after several property transfers between the Defendant and her mother **(See Exhibit E)**. On September 4, 2003, the Defendant obtained a mortgage loan on the property for $275,700.00. Eleven months later, on August 4, 2004, the Defendant secured a $150,000.00 HELOC loan from Bank of America on Plaintiff's property. Subsequently, nine months later, on May 20, 2005, the Defendant acquired a $460,000 mortgage loan by refinancing the 880 West 1st Street, Unit 404 property. Thus, over a period of 18 months (between 09/04/2003 and 05/20/2005), the Defendant independently received and had access to **$334,300.00**. This amount included $184,300.00 in cash, which were the proceeds from refinancing her condominium, and $150,000.00 access to the HELOC loan, which she obtained through false representations encumbering Plaintiff's property at 121 South Hope Street.

### 4. Plaintiff Justifiably Relied on the Representations

Plaintiff's reliance on Defendant's false representations was not only reasonable but also required to sustain the fraudulent transaction. As established in _Field v. Mans_, 516 U.S. 59 (1995), justifiable reliance is a critical element in fraud claims underpinning non-dischargeability; a creditor's reliance need not be perfect but must be objectively reasonable given the circumstances. Here, Plaintiff reasonably depended on the information provided by Defendant, and the subsequent investigation revealed that such reliance was misplaced due to fraudulent misrepresentations.

_//_

Justifiable reliance is an element of fraud under California law. See *Hinesley v. Oakshade Town Center*, 135 Cal. App. 4th 289 (2005); see also *Goehring v. Chapman University*, 121 Cal. App. 4th 353 (2004). The court proceedings in the state court revealed that the Plaintiff made several requests for the Defendant to quitclaim the title back to him, but to no avail. Consequently, the Plaintiff had to file a lawsuit to reclaim the title of the Hope property. The state court determined that the Defendant was a resulting trustee and not the owner of the Hope property, ordering the Defendant to quitclaim the property to the Plaintiff.

**5. Plaintiff Sustained Damage as a Proximate Result of the Representations**

Nondischargeability determinations require a causal nexus between the subject debt and the fraud perpetrated. See *Field v. Mans*, 516 U.S. 59, 61 (1995) (describing sections 523(a0(2)(A) as barring the discharge of debts "resulting from" or "traceable to" fraud). Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the Defendant should be legally responsible." *In re Britton*, 950 F.3d 602, 604 (9th Cir. 1991).

Proximate cause entails (1) causation in fact, which requires a Defendant's misrepresentations to be a substantial factor in determining the cause of conduct that results in loss, and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." See *In re Brown*, 217 B.R. 857, 862 (S.D. Cal. 1998) (citing Restatement (Second) of Torts, §§546, 548A. "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if the loss might reasonably be expected to result from reliance." Restatement (Second) of Torts, §548A.

The state court found monetary damages against the Defendant in the amount of $119,580.81 regarding the BofA lien against the property, minus $3,391.00 in 2017-2018 for insurance and property tax payment made by the Defendant to be credited against the judgment, and that the Plaintiff shall recover costs in the amount of $4,487.41 against the Defendant. **See Exhibit G**, state court Final Amended Judgment dated 01/19/2018.

1

## VI.  <u>PRAYER</u>

2

For the reasons stated above, the Plaintiff respectfully requests that the Court grant

3

summary judgment in favor of the Plaintiff and that the Court enter a nondischargeable

4

judgment for $141,185.86 which includes $119,580.81 from the state court judgment, plus

5

cost in the amount of 4,487.41, plus the $20,508.64 the Plaintiff paid to QLSC to avoid

6

foreclosure of the Hope property in April 2024, minus $3,391.00 deduction as stated in the

7

state court's judgement with interest continuing at the legal rate of 10 percent per annum,

8

compounding thereafter, plus such fees and costs to which the Plaintiff demonstrates an

entitlement or the Court considers just and proper.

9

10

Dated:  May 4, 2025

11

Respectfully submitted,

12

13

14

Edmund Robert Soracco
In Propia-persona
121 S. Hope St. Unit 506
Los Angeles, CA 90011

15

16

17

18

19

20

21

22

23

24

25

"EXHIBIT A" CONSISTS OF 54 PAGES

SHOWN HERE IS ONLY PAGE <u>13</u> OF 67

DOCUMENT FILED ON 10/24/2024

"NOTICE OF MOTION AND MOTION
FOR RELIEF FROM THE AUTOMATIC
STAY UNDER 11 U.S.C. &362"

BY DARREN J. DEVLIN, ESQ.

# EXHIBIT  A

# BANK OF AMERICA EQUITY MAXIMIZER® AGREEMENT AND DISCLOSURE STATEMENT

**ACCOUNT NUMBER** ▓▓▓▓▓▓▓▓▓▓

**Borrower:** PATRICIA DEL CARMEN BRAVO

**Lender:** Bank of America, N.A.
c/o North Carolina Main Office
101 Tryon Street
Charlotte, N.C. 28255

---

**CREDIT LIMIT:** $ 150,000.00          **DATE OF AGREEMENT:**   08 / 13  / 04

**Introduction.** This Bank of America Equity Maximizer ® Agreement and Disclosure Statement ("Agreement") governs your line of credit (the "Equity Maximizer Account") issued through Bank of America, N.A. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Bank of America, N.A. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay Bank of America, N.A., or order, the total of all credit advances and **FINANCE CHARGES,** together with all costs and expenses for which you are responsible under this Agreement or under the "Security Instrument" which secures your Equity Maximizer Account (**"Security Instrument"**). You will pay your Equity Maximizer Account according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each borrower authorizes any other borrower, on any other borrower's signature alone, to cancel the Equity Maximizer Account, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.** The term of your Equity Maximizer Account will begin as of the date of this Agreement ("Opening Date") and will continue until        AUGUST 13th, 2029       ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Equity Maximizer Account will begin on the date after the Opening Date following the expiration of the right to cancel, the perfection of the Security Instrument securing this agreement, receipt of all required certificates of noncancellation, and the meeting of all our other conditions and will continue as follows: 120 months ("Draw Period"). You may obtain credit advances during this Draw Period. After the Draw Period ends, the Repayment Period will begin and you will no longer be able to obtain credit advances. The length of the Repayment Period is as follows: up to 180 months depending on the payment schedule set forth below. You agree that we may renew or extend the period during which you may obtain credit advances or make payments. Notwithstanding the foregoing, in no event will the time during which you may obtain credit advances on the Equity Maximizer Agreement exceed twenty-five (25) years.

## Minimum Payment

**During the Draw Period.** The "Total Minimum Payment Due" is equal to the Variable Rate Balance Minimum Payment below; the payment due, if any, for any outstanding Fixed Rate Loan Option and any past due amounts from prior billing periods. (Some Fixed Rate Loan Options may have a different due date and are not figured in the calculation of the Total Minimum Payment Due). At any time you may pay more than the Total Minimum Payment Due, make additional payments or pay in full or in part the Outstanding Balance. The "Outstanding Balance" is the new balance of the Equity Maximizer Account (which, if applicable, includes principal, accrued interest on the outstanding principal, fees and charges, Property Expenses (defined as any expense which we incur because you do not fulfill all obligations of this Agreement or if you or another party does not fulfill all obligations of the Security Instrument for the property which secures this Agreement) and any voluntary insurance or Borrowers Protection Plan™. We reserve the right to apply payments in any manner we choose, without notice. Your "Variable Rate Balance" is all of your Outstanding Balance that is not part of a Fixed Rate Loan Option.

You may choose any of the following monthly and quarterly Draw Period payment options. Your billing statement will reflect the option you have chosen. You may also change your Draw Period payment option at a later time.

   **Variable Rate Balance Minimum Payment** – Depending on what payment schedule option you choose for the Draw Period, the Variable Rate Balance Minimum Payment may vary. The Variable Rate Balance Minimum Payment will not be less than the amount of accrued interest and any voluntary insurance, plus any unpaid fees.

California

EXHIBIT A

# EXHIBIT B

# E ROBERT SORACCO

121 South Hope Street, Unit 506 * Los Angeles, California 90012
Phone: 213-268-1825 * Email: erobert11@hotmail.com

---

# SENT VIA FEDEX COURIER

---

April 13, 2023

**QUALITY LOAN SERVICE CORPORATION**
ATT: GENERAL ACCOUNTING DPT.
2763 Camino Del Rio South
San Diego, California 92108

In Ref.: **TRUSTEE FILE No.: CA-22-949198-BF**
**SLS Loan number ending in XXX-5648**
**FOR THE REAL PROPERTY LOCATED AT:**
**121 SOUTH HOPE STREET, UNIT 506,**
**LOS ANGELES, CA 90012**

Dear Sir/Madam:

Enclosed with this letter is a Bank of America Cashier check Number 1306640483, in the amount of TWENTY THOUSAND FIVE HUNDRED EIGHT DOLLARS AND SIXTY-FOUR CENTS [$20,508.64] to be applied towards the default amount of the above loan number ending in XXX-5648 for the property located at 121 South Hope Street, Unit 506, Los Angeles, CA 90012, as per attached Quality Loan Service Corp. Reinstatement Notice dated April 7, 2023.

Sincerely,

E Robert Soracco
Owner

cc  Dan Goulding, General Counsel
    Quality Loan Service Corporation
    2763 Camino Del Rio South, Suite 200
    San Diego, California 92108

1

Cashier's Check                     No. 1306640483

BANK OF AMERICA

Void After 90 Days          91-170/1221          Date 04/13/23 03:36:59 PM

Notice to Purchaser: In the event that this check is lost, misplaced or          NAZ
stolen, a stop statement and 90-day waiting period will be required
prior to replacement. This check should be negotiated within 90 days.

LOS ANGELES MAIN

0002    0000600    0091          BANK OF AMERICA  20508 64          **$20,508.64**
                                                  TWO ZERO FIVE ZERO EIGHT CTS CTS

Pay

**Twenty Thousand Five Hundred Eight and 64/100 Dollars**

To The
Order Of        QUALITY LOAN SERVICE CORPORATION

                ATTN: GENERAL ACCOUNTING

Remitter (Purchased By):  EDMUND SORACCO
                CA-22-949198-BF

Bank of America, N.A.    121 South Hope Street #506, Los Angeles, CA 90012
PHOENIX, AZ                                              AUTHORIZED SIGNATURE

⑆1306640483⑆ ⑆122101706⑆ 4570029311717⑈

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENTS.



2763 Camino Del Rio South • San Diego, CA 92108 • (866) 645-7711

## REINSTATEMENT QUOTE

April 7, 2023

**PATRICIA DEL BRAVO**
erobert1@hotmail.com

**121 HOPE STREET S #506**
**LOS ANGELES, CA 90012**

**THIS LETTER IS BEING SENT PURSUANT TO YOUR REQUEST**

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

**The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or http://www.ftc.gov.**

### SALE SCHEDULED FOR 5/2/2023

This correspondence is sent in conjunction with the processing of a non-judicial foreclosure. Your request does not stop the foreclosure proceedings from continuing. **Accordingly, it is your responsibility to determine if a Trustee's sale might be scheduled for a date earlier than the expiration date of these figures. Unless you obtain written acknowledgement that any scheduled sale will be postponed, the sale may be held as scheduled.**

| | |
|---|---|
| Lender/ Servicer Name: | Specialized Loan Servicing, LLC |
| Loan Number Ending With: | XXXXXX5648 |
| Loan Type: | Conventional Residential |
| Attorney/Trustee File No.: | CA-22-949198-BF |
| Mortgagor(s) Name: | PATRICIA DEL BRAVO |
| Property Address: | 121 HOPE STREET S #506, LOS ANGELES, CA 90012 |

**Please Note:** Requesting a reinstatement or payoff quote does not stop the foreclosure process. Waiting to make your payment may increase the amount necessary to cure the default. Please see dates and amounts below which will increase as the foreclosure process continues. You should submit payment as quickly as possible to avoid incurring any additional fees or costs.

Please be advised that this quote expires on 4/28/2023. **If funds are not received on or before the expiration date, a new quote should be requested. Please note that amounts submitted based upon the below breakdown after the expiration date may not be accepted.**

*Reinstatement Quote – Page 1*
*Trustee File No.: CA-22-949198-BF*

The amount to reinstate the above referenced loan as of 4/28/2023 is $20,508.64 and is itemized as follows:

| | | |
|---|---|---|
| **Payments From 8/8/2020** | | $18,909.28 |
| **Suspense** | | -$165.00 |
| **Advance** | | $1,500.36 |
|   • Mailing | $39.04 | |
|   • Recording Fee | $224.00 | |
|   • Trustee Fees | $695.58 | |
|   • Title | $390.00 | |
|   • Taxes | $151.74 | |
| **Incurred Foreclosure Fees and Costs** | | $264.00 |
|   • Posting/Publication Charges | $150.00 | |
|   • Recordings | $114.00 | |

*The line items designated with an asterisk will be legally required and incurred if the loan is reinstated or paid off. If the loan is not reinstated or paid off, they will not be incurred or added to the total amount owed at this time.

The submission of less than the total amount due on the quote could result in the return of the remitted funds. While this quote is good through a date in the future, if you are remitting payment prior to the expiration date, we ask that you not deduct any sums.

The figures listed above include items that have been paid by the lender or servicer or incurred by Quality that are currently due by the expiration date.

Please understand that the above figures are subject to final verification upon receipt by the lender or servicer. All fees and costs incurred after the issuance of this letter will continue to be assessed until the loan delinquency is cured.

We reserve the right to update these figures through the projected date as issuance of this letter does not suspend the foreclosure action or the payment of taxes, insurance, or other advances authorized pursuant to the terms of your loan documents.

If your payment is less than the total reinstatement amount due by the expiration date, the lender or servicer reserves the right to reject your payment and continue with the legal process.

Thank you,

**Payoff and Reinstatement Department**
Payoffs.reinstatements@qualityloan.com
(866) 645-7711 Ext. 5318

Enclosure

*Reinstatement Quote – Page 2*
*Trustee File No.: CA-22-949198-BF*

# EXHIBIT C

This page is part of your document - DO NOT DISCARD



05 1257833

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
05/31/05 AT 08:00am

**TITLE(S) :**





L E A D   S H E E T

**FEE**

| FEE $ | | SS |
|---|---|---|
| DAF $ | 2 | |
| C-20 | | |

**D.T.T.**

NOTIFICATION SENT-$4 

**CODE**
**20**

**CODE**
**19**

**CODE**
**9**

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.     Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

5/31/05

## PROGRESSIVE TITLE

Recording Requested By.
A. GONZALES

05  1257833

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
LEAH Y. PHAN

———— [Space Above This Line For Recording Data] ————

16621-CCS                          00010162273205005
[Escrow/Closing #]                    [Doc ID #]

## DEED OF TRUST

MIN 1000157-0005005897-9

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated MAY 20, 2005 , together
with all Riders to this document.
(B) "Borrower" is
PATRICIA DEL CARMEN BRAVO, A SINGLE WOMAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291       Initials                Form 3005 1/01
CONV/VA

*23991*

*10162273200000100 8A*

PR0511628

5/31/05

DOC ID #: 00010162273205005

Borrower's address is
880 WEST 1ST STREET #404, LOS ANGELES, CA 90012
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  MAY 20, 2005        . The
Note states that Borrower owes Lender
FOUR HUNDRED SIXTY THOUSAND and 00/100

Dollars (U.S. $ 460,000.00        ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JUNE 01, 2035        .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii)

05  1257833

5/31/05

State of California
County of LOS ANGELES

DOC ID #: 00010162273205005

} ss.

On MAY 25, 2005        before me, TERRY A. WILLIAMS, NOTARY PUBLIC
                                                              personally appeared

PATRICIA DEL CARMEN BRAVO

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                                        (Seal)



TERRY A. WILLIAMS
Comm. # 1483493
NOTARY PUBLIC - CALIFORNIA
Riverside County
My Comm. Expires APRIL 13, 2008

-6A(CA) (0207)        CHL (09/02)        Page 16 of 16        Initials        Form 3005  1/01

05 1257833

# EXHIBIT D

# FELDMAN | BERMAN | SCHWARTZ LLP
### ATTORNEYS AT LAW

20750 Ventura Boulevard, Suite 201
Woodland Hills, California 91364
Telephone: (818) 707-1465  Facsimile: (818) 707-1462
Email: gschwartz@fbsllp.com

September 10, 2014

**Via email at erobert1@hotmail.com**
**and by 1ˢᵗ Class U.S. Mail**

E. Robert Soracco                          E. Robert Soracco
626 Wilshire Blvd., Suite 711              121 South Hope Street, Unit 506
Los Angeles CA 90017                       Los Angeles CA  90012

    **Re:**   *121 South Hope Street, Unit 506, Los Angeles CA 90012("Property")*

Dear Mr. Soracco:

    Our firm represents Ms. Patricia del Carmen Bravo.

    We have been authorized to advise you that Ms. Bravo has elected the sell the Property. It is her intention to list the Property for sell within the next couple of weeks. Due to the fact that you are a tenant at the Property, we felt compelled to give you notice of her intentions. The broker will obviously need access to show the Property and we expect you will cooperate in this process.

    I do recommend that you should immediately commence to look for a "new" place of residence as we expect the property to be sold soon. Please contact me directly if you have any questions on this matter. Please do not contact Ms. Bravo.

                Very truly yours,

                Gary N. Schwartz

GNS:tj
cc:    P. del Carmen Bravo

△π EXHIBIT 13
Deponent Bravo
Date 1/15/16 Rptr. AS
WWW.DEPOBOOK.COM

# EXHIBIT E



L E A D   S H E E T

01 1836735

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

SEP 27 2001        AT 8 A.M.

SPACE ABOVE THIS LINE FOR RECORDERS USE



## TITLE(S)

## DEED

**FEE**

| FEE $13 | JJ |
|---------|----|
|    3    |    |

D.T.T.
267
1/02

**CODE
20**

**CODE
19**

**CODE
9___**

NOTIFICATION SENT $4

Assessor's Identification Number (AIN)
To Be Completed By Examiner OR Title Company In Black Ink          Number of Parcels Shown

5151   016  060                           007



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:

SCT

AND WHEN RECORDED MAIL TO:

PATRICIA SORACCO
880 W. 1ST STREET, #404
LOS ANGELES, CA 90012

01 1836735  2

---

THIS SPACE FOR RECORDER'S USE ONLY:

ESCROW NO. 25732-JR

**INDIVIDUAL GRANT DEED**

TITLE ORDER NO. 214608897-19

THE UNDERSIGNED GRANTOR(S) DECLARE(s)
**DOCUMENTARY TRANSFER TAX is $ 269.50  CITY TRANSFER TAX is $ 1,102.50**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of LOS ANGELES, **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**LESLIE WEE, an Unmarried Man**

hereby GRANT(s) to:

**PATRICIA SORACCO, a Married Woman, as her sole and separate property**

the real property in the city of LOS ANGELES, County of Los Angeles, State of California, described as:
**LEGAL DESCRIPTION ATTACHED AS EXHIBIT "A" AND MADE A PART HEREOF**

ALSO KNOWN AS: 880 W. 1ST STREET, #404, LOS ANGELES, CA   90012
A.P. # 5151-016-060

DATED September 25, 2001
STATE OF CALIFORNIA
COUNTY OF Los Angeles
On _____ 9/25/01 _____
before me, ____ Jung Hyun Lee ____
a Notary Public in and for said State, personally appeared

____ Leslie Wee ____

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____

LESLIE WEE

JUNG HYUN LEE
COMM. # 1171910
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. FEB. 1, 2002

(This area for official notarial seal)

Mail tax statements to: SAME AS ABOVE



L E A D   S H E E T

01 1836736

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

SEP 27 2001

AT 8 A.M.

SPACE ABOVE THIS LINE FOR RECORDERS USE

## TITLE(S)

**FEE**

FEE $ 71 - GG

  20

**D.T.T.**

**CODE 20**     D.A. FEE Code 20      $ 4.00

**CODE 19**

**CODE 9___**

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
To Be Completed By Examiner OR Title Company In Black Ink

Number of Parcels Shown



**THIS FORM IS NOT TO BE DUPLICATED**

*SCT*

Recording Requested By:
GENUINE HOME LOANS, INC., A
CALIFORNIA CORPORATION

**01 1836736**

And After Recording Return To:
GENUINE HOME LOANS, INC., A
CALIFORNIA CORPORATION
150 SOUTH LOS ROBLES AVENUE,
#460
PASADENA, CALIFORNIA 91101
Loan Number: 015057

21460889-19
5151-016-06

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated SEPTEMBER 24 , 2001 , together with all Riders to this document.
**(B)** "Borrower" is PATRICIA SORACCO, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is GENUINE HOME LOANS, INC., A CALIFORNIA CORPORATION

Lender is a CORPORATION                                                      organized
and existing under the laws of CALIFORNIA
Lender's address is 150 SOUTH LOS ROBLES AVENUE, #460, PASADENA,
CALIFORNIA 91101
Lender is the beneficiary under this Security Instrument.
**(D)** "Trustee" is SOUTH COAST TITLE COMPANY, 4401 N. ATLANTIC AVE.,
LONG BEACH, CALIFORNIA 90807

**(E)** "Note" means the promissory note signed by Borrower and dated SEPTEMBER 24 , 2001 .
The Note states that Borrower owes Lender ONE HUNDRED NINETY SIX THOUSAND AND
00/100                               Dollars (U.S. $ 196,000.00           ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
OCTOBER 1, 2031 .
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

———————————————————————————————

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Document Systems, Inc. (800) 649-1362
Page 1 of 13

Form 3005 1/01

CA30051.DOT

*13*

the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24.    Substitute Trustee.  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25.    Statement of Obligation Fee.  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Patricia Soracco_ _____ (Seal)
PATRICIA SORACCO                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

Witness:                          Witness:

_____   _____

01 1836736

CA300512.DOT

*14*

State of California                     )
                                        ) ss.
County of LOS ANGELES                   )

On Sep. 24, 2001    before me,  EFRAIN ALBERTO PAZ

personally appeared PATRICIA SORACCO

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

EFRAIN ALBERTO PAZ
Commission # 1228282
Notary Public - California
Los Angeles County
My Comm. Expires Jul 10, 2003

NOTARY SEAL

_____
NOTARY SIGNATURE
Efrain Alberto Paz
(Typed Name of Notary)

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
Document Systems, Inc. (800) 649-1362                    Page 13 of 13

CA300513.DOT

01 1836736

This page is part of your document - DO NOT DISCARD

**04 0705525**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
03/25/04 AT 08:00am

DEED,

TITLE(S) :



L E A D   S H E E T

FEE

| FEE $10   F |
| 2 |

D.T.T

CODE
20

CODE
19

CODE
9

NOTIFICATION SENT

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

5151 - 016 - 060                          001


THIS FORM NOT TO BE DUPLICATED


3/25/0 4

RECORDING REQUESTED BY·

When Recorded Mail Document
and Tax Statement To:

PATRICIA SORACCO
12438 HENZIE PLACE
GRANADA HILLS CA 91344

04 0705525

Escrow No
Title Order No

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN 5151.016.060

**GRANT DEED**                    ACCOMMODATION ONLY

The undersigned grantor(s) declare(s)
Documentary transfer tax is $_____0_____  City tax $_____0_____
[  ] computed on full value of property conveyed, or
[  ] computed on full value less value of liens or encumbrances remaining at time of sale.
[X] Unincorporated Area  X City of _____LOS ANGELES_____

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
PATRICIA DEL CARMEN BRAVO A SINGLE WOMAN

hereby GRANT(S) to
PATRICIA SORACCO A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY AND PATRICIA DEL
CARMEN BRAVO, A SINGLE WOMAN AS JOINT TENANTS
the following described real property in the City of    LOS ANGELES
County of    LOS ANGELES                                                State of California

ADDRESS 880 WEST 1ST STREET, #404 LOS ANGELES, CA 90012
LEGAL DESCRIPTION OF PROPERTY ATTATCHED AS EXHIBIT A

ACCOMMODATION ONLY

DATED    9- 9. 03

STATE OF CALIFORNIA
COUNTY OF Los Angeles
ON  9 9 03  before me,
MARILU ROCHA  personally appeared
PATRICIA DEL CARMEN
BRAVO
personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument

Witness my hand and official seal

Signature _Marilu Rocha_

                    PATRICIA DEL CARMEN BRAVO

MARILU ROCHA
COMM 1291920
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm Exp Feb 19, 2005

MAIL TAX STATEMENT AS DIRECTED ABOVE

This page is part of your document - DO NOT DISCARD

**03  2738135**

```
RECORDED/FILED IN OFFICIAL RECORDS
         RECORDER'S OFFICE
       LOS ANGELES COUNTY
            CALIFORNIA

    SEP   17   2003
                        AT 8 A M
```

**TITLE(S) :**  



L E A D    S H E E T

**FEE**

| FEE $30 | H |
| A.F.N.F. 94 | 2 |

**D.T.T**

**CODE 20**

**CODE 19**

**CODE 9**

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of Parcels Shown**

5151 - 016 - 060

001

THIS FORM NOT TO BE DUPLICATED

RECORDING REQUESTED BY
*cal*

AND WHEN RECORDED MAIL TO:
PATRICIA DEL CARMEN BRAVO

880 W 1st St. #404
Los Angeles CA 90012

**03 2738135**  2

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.:                    Order No.: 36022530-HO7              Escrow No.: 19387

## QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) DOCUMENTARY TRANSFER TAX _$NONE_
[   ]  computed on full value of property conveyed, or
[   ]  computed on full value less value of liens or encumbrances remaining at time of sale,
[   ]  unincorporated area;   [   ] City of  LOS ANGELES , and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**PATRICIA SORACCO, AN UNMARRIED WOMAN AND PATRICIA DEL CARMEN BRAVO WHO ACQUIRED
TITLE AS PATRICIA BRAVO, A SINGLE WOMAN**

hereby remise, release and forever quitclaim to
**PATRICIA DEL CARMEN BRAVO, A SINGLE WOMAN**

the following described property in the City of LOS ANGELES, County of Los Angeles State of California;

(COMPLETE LEGAL DESCRIPTION TO FOLLOW)
"This is a bonafide gift and the grantor received nothing in return,
RT11911."


PATRICIA SORACCO                              PATRICIA BRAVO

Document Date:  September 8, 2003

STATE OF CALIFORNIA                    )SS
COUNTY OF  Los Angeles        )
On   9-9-03        before me,  Marilu Rocha
personally appeared  Patricia  Bravo  &  Patricia  Soracco
personally known to me (or ~~proved to me on the basis of satisfactory evidence~~) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature  Marilu Rocha

This area for official notarial seal.

MARILU ROCHA
COMM. 1291920
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb. 19, 2005

Mail Tax Statements to:    SAME AS ABOVE  or  Address Noted Below

This page is part of your document - DO NOT DISCARD

**03 2738136**

```
RECORDED/FILED IN OFFICIAL RECORDS
        RECORDER'S OFFICE
       LOS ANGELES COUNTY
           CALIFORNIA
    SEP   17   2003   AT 8 A.M.
```

**TITLE(S)** :

L E A D   S H E E T

| FEE $ | ✓ H |
|-------|------|
| DAF $ | 2 |
| C-20 | |

*20*

**FEE**

**D.T.T**

NOTIFICATION SENT $4

**CODE 20**

**CODE 19**

**CODE 9**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of Parcels Shown**

**THIS FORM NOT TO BE DUPLICATED**

2

**03  2738136**

Recording Requested By:
HARBOURTON MORTGAGE INVESTMENT

Return To:
HARBOURTON MORTGAGE INVESTMENT

2121 ALTON PARKWAY
IRVINE, CA  92606

Prepared By:

HARBOURTON MTG. INVESTMENT CORP.
1300 NORTH DUTTON AVENUE, SUITE A
SANTA ROSA, CA 95401
(866) 661-4642

──────────────[Space Above This Line For Recording Data]──────────────

# DEED OF TRUST

LOAN NO.:  01308282                                    MIN  100091200013082825
ESCROW NO.:  19387                                     MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          SEPTEMBER 04, 2003          ,
together with all Riders to this document.
(B) "Borrower" is
PATRICIA DEL CARMEN BRAVO, A SINGLE WOMAN

Borrower's address is 880 WEST 1ST STREET, LOS ANGELES, CA  90012
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
HARBOURTON MORTGAGE INVESTMENT CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE

Initials:

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP-6A(CA) (0207)                    Page 1 of 15          LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (06/03)

36 02 2530-407

3

Lender's address is
1300 NORTH DUTTON AVE., STE. A, SANTA ROSA, CA 95401-

(D) "Trustee" is
FIRST AMERICAN TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated         SEPTEMBER 04, 2003
The Note states that Borrower owes Lender

TWO HUNDRED SEVENTY FIVE THOUSAND SEVEN HUNDRED AND NO/100 X X X X X X X X X X X X X X Dollars
(U.S. $ 275,700.00                 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    OCTOBER 01, 2033

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

VMP-6A(CA) (0207)                      Page 2 of 16                      Form 3005 1/01

03  2738136

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                    -Witness

_____
                                    -Witness

_____(Seal)       _____(Seal)
PATRICIA DEL CARMEN BRAVO  -Borrower              -Borrower

_____(Seal)       _____(Seal)
                         -Borrower              -Borrower

_____(Seal)       _____(Seal)
                         -Borrower              -Borrower

_____(Seal)       _____(Seal)
                         -Borrower              -Borrower

03 2738136

16

State of CALIFORNIA
County of *Los Angeles*

On *9. 9. 03*                    before me, *Marily Rocha* } ss.

                                                                personally appeared

PATRICIA DEL CARMEN BRAVO

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Marilu Rocha*(Seal)



MARILU ROCHA
COMM. 1291920
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb. 19, 2005

Initials: _____
Form 3005  1/01

VMP-6A(CA) (0207)                    Page 15 of 15

03 2738136

5/31/05

# FROGRESSIVE TITLE

05 1257832

RECORDING REQUESTED BY:
Borrower

AND WHEN RECORDED MAIL TO:

Ms. Bravo
880 West 1st Street #404
Los Angeles, CA 90012

Order No.   PR0511628
Escrow No. 302-16621-CCS
Parcel No.  5151-016-060

5151-16-60

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## INDIVIDUAL QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX $ Ø THIS IS A BONAFIDE GIFT AND
    [ ] computed on full value of property conveyed; or         THE GRANTOR RECEIVED NOTHING
    [ ] computed on full value less value of liens or encumbrances remaining at time of saleRETURN, R & T 11911"
    [ ] unincorporated area:       [ X ] City of Los Angeles   and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**Patricia Soracco, a married woman as her sole and separate property and Patricia Del Carmen Bravo, a
single woman as joint tenants**

Hereby remise, release and forever quitclaim to
**Patricia Del Carmen Bravo, a single woman**

the following described property in the City of Los Angeles County of Los Angeles, State of California;

See Exhibit "A" attached hereto and made a part hereof.

Document Date: May 20, 2005

_Patricia Soracco_
Patricia Soracco

_(signature)_
Patricia Del Carmen Bravo

STATE OF CALIFORNIA        }
                      } S.S.
COUNTY OF _Los Angeles_   }

On _MAY 25, 2005_, before me, _TERRY A. WILLIAMS, NOTARY PUBLIC,_ a
Notary Public in and for said County and State, personally appeared _PATRICIA SORACCO AND PATRICIA DEL
CARMEN BRAVO_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _(signature)_

                     TERRY A. WILLIAMS
                     Comm. #1483493
                 NOTARY PUBLIC-CALIFORNIA
                   Riverside County
              My Comm. Expires APRIL 13, 2008

Mail Tax Statements to: Same as Above or Address Noted Below

PR0511628



**This page is part of your document - DO NOT DISCARD**

05  1257833

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
05/31/05 AT 08:00am**

## TITLE(S) :



LEAD SHEET

**FEE**

| FEE $ SS |
| DAF $   2 |
| C-20 |

**D.T.T.**

**NOTIFICATION SENT-$4 ⊚**

**CODE
20**

**CODE
19**

**CODE
9____**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**   **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

5/31/05

**PROGRESSIVE TITLE**

Recording Requested By.
A. GONZALES

05  1257833

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
LEAH Y. PHAN

5151-16-60

_____ [Space Above This Line For Recording Data] _____

16621-CCS                    00010162273205005
[Escrow/Closing #]              [Doc ID #]

# DEED OF TRUST
MIN 1000157-0005005897-9

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MAY 20, 2005 , together with all Riders to this document.
(B) "Borrower" is
PATRICIA DEL CARMEN BRAVO, A SINGLE WOMAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16
VMP ®-6A(CA) (0207)    CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291        Initials   Form 3005 1/01
CONV/VA

* 23991 *                    * 1 0 1 6 2 2 7 3 2 0 0 0 0 0 1 0 0 6 A *

PR0511628

5/31/05

DOC ID #: 00010162273205005

Borrower's address is
880 WEST 1ST STREET #404, LOS ANGELES, CA 90012
Borrower is the trustor under this Security Instrument.
**(C) "Lender" is**
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
**(D) "Trustee" is**
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated MAY 20, 2005      . The Note states that Borrower owes Lender
FOUR HUNDRED SIXTY THOUSAND and 00/100

Dollars (U.S. $ 460,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JUNE 01, 2035      .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii)

-6A(CA) (0207)      CHL (09/02)         Page 2 of 16          Initials ___    Form 3005 1/01

05 1257833

5/31/05

DOC ID #: 00010162273205005

State of California
County of **LOS ANGELES**                              } ss.

On **MAY 25, 2005**            before me, **TERRY A. WILLIAMS, NOTARY PUBLIC**
                                                              personally appeared

**PATRICIA DEL CARMEN BRAVO**

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



TERRY A. WILLIAMS
Comm. # 1483493
NOTARY PUBLIC - CALIFORNIA
Riverside County
My Comm. Expires APRIL 13, 2008

05 1257833

# EXHIBIT F

**Superior Court of California**

**County of Los Angeles**

**Department 61**

**FILED**
Superior Court of California
County of Los Angeles

JAN −5 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
        Latrina Woods

| | |
|---|---|
| E. ROBERT SORACCO, an individual, | Case No.: BC560739 |
|     Plaintiff(s), | **STATEMENT OF DECISION** |
| v. | |
| PATRICIA DEL BRAVO CARMEN, an individual, ET Al., | |
|     Defendant(s). | |

Pursuant to California Rules of Court, Rule 3.1590 and Code of Civil Procedure, section 632, the following is the Tentative Statement of Decision and Judgment in the above captioned case which will become the final statement of decision, unless within 15 days of the date of service of this Proposed Statement, a party files and serves objections thereto. The court may in its discretion order a hearing on the objections. (Cal. Rules of Court, Rule 3.1590, subds. (j) & (k).)

## INTRODUCTION

This case arises from a complicated relationship between an uncle and niece, involves a bankruptcy, the acquisition of real property, the obtaining of a mortgage, various oral agreements, numerous refinances, and the eventual dispute as to who is the owner of the real property at issue. The property in question is located at 121 Hope Street, Unit 506, in Los Angeles, CA.   Plaintiff is E. Robert Sorocco. Defendant is Plaintiff's niece, Patricia Del Carmen Bravo, who currently holds legal title to the property.

As an overview, Plaintiff entered into a lease for the premises in 1994. The lease contained an option to purchase the property. Due to financial difficulties and the filing of a bankruptcy, Plaintiff was unable to exercise the option to purchase the property and/or take title in his name. With the arrival of Defendant from Argentina, Plaintiff and Defendant entered into an oral agreement which for the most part is undisputed. The oral agreement called for Defendant to obtain a mortgage to purchase the property and obtain title in her name, while Plaintiff would be responsible for the payments.   Defendant would transfer title to the property to Plaintiff once he was able to refinance the property, after the loan was paid off, or within approximately 6-8 months, depending on the version believed.

This agreement continued through the year 2000, when the loan became due. As Plaintiff was still unable to qualify, Defendant obtained a new loan, again in her name. Defendant refinanced the loan in 2002 and 2003, all the while, title remaining in her name. Defendant contends that prior to the 2000 refinance, as a condition of Defendant remaining on title, Plaintiff orally agreed to grant Defendant a 50% ownership interest in the property, rising to 100% ownership upon Plaintiff's death. Plaintiff disputes that such an agreement ever existed.

−1−

In 2013, Plaintiff made the final payment on the mortgage and demanded title to the property from Defendant. Defendant refused, relying upon the 2000 oral agreement. Further unbeknownst to Plaintiff, Defendant had taken out a line of credit on the property in approximately 2012, upon which she is now making payments. Thus this lawsuit ensued, Plaintiff seeking a resulting trust in his favor, a finding of fraud, conversion, and punitive damages.

## EVEIDENCE CODE §662 AND THE REBUTTABLE FORM OF TITLE PRESUMPTION

The owner of the *legal* title to property is presumed to be the owner of the full *beneficial* title. To overcome the "form of title" presumption, the evidence of a contrary agreement or understanding must be clear and convincing. (Evidence Code, §662) For Plaintiff to prevail on his claims, the court must look to the evidence presented at trial and determine whether or not it meets this heightened burden. "This standard requires evidence that is so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind." (*In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 190.)

Here, it is undisputed that legal title is, and always has been, in Defendant's name. Therefore, it is Plaintiff's burden to overcome the presumption set forth in Evidence Code section 662 and show by clear and convincing evidence that a contrary agreement or understanding existed.

### The 1995 Oral Agreement

Plaintiff testified that he wished to purchase the property but was unable to. Both Plaintiff and Defendant testified that Defendant agreed to take title in her name due to Plaintiff's financial condition. Defendant does not dispute this nor the fact that title was taken for the benefit of Plaintiff. It was further undisputed that title would revert to Plaintiff at some point. Plaintiff testified that title would be transferred once he was able to refinance then property or paid it off completely. Defendant contends she agreed to take title for a short time, 6-8 months, until Plaintiff got back on his feet or was able to refinance. What is clear however, is that title was intended to revert to Plaintiff and that initially title was taken for the benefit of Plaintiff. The evidence reflects that during the next 5 years, 1995-2000, Plaintiff made all loan payments, homeowners association dues, insurance, taxes, utilities and all expenses associated with the upkeep of the property. In 2000, the loan carried by the previous owners became due. Plaintiff was still not in a position financially to refinance the property.

### The 2000 Oral Agreement

Once the loan became due in 2000, Plaintiff was in jeopardy of losing the property as he still could not obtain financing. Defendant testified that at this point, she wished to be taken off title. Defendant testified that in consideration for her remaining on title and refinancing the property, Plaintiff agreed to grant her a 50% ownership interest in the property during his lifetime and 100% upon his death. Plaintiff disputes that he ever entered into such an agreement. Defendant did refinance the property, the prior owners were paid off, Plaintiff received $30,000 cash, and Plaintiff continued to make the monthly mortgage payments, as well as all other expenses associated with the property.

### Subsequent Refinances and Pay-Off

It is undisputed that in 2002 and 2003, Defendant refinanced the property as better terms became available. Title remained in Defendant's name. Plaintiff continued to make all the payments,

-2-

eventually resulting in the pay-off of the loan balance. From 1995 to the present, Plaintiff continually resided in the property. Defendant resided in the unit on and off and eventually rented her own unit.

## RESULTING TRUST

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a [resulting] trust is presumed to result in favor of the person by or for whom such payment is made." (*In re Marriage of Ruelas* (2007) ("*Ruelas*")154 Cal.App.4[th] 339, 342.)   The resulting trust is imposed by law to enforce the intentions of the parties. (*Ibid.*) "Clear and convincing proof is required to support a declaration that a resulting trust exists." (*Johnson v. Johnson* (1987) 192 Cal.App.3d 551, 556.) "[T]he burden of proving the elements necessary to establish a resulting trust rests on the party asserting it." (*Jones v. Kelley* (1953) 121 Cal.App.2d 130, 134-35.)

A resulting trust can be imposed even though the claimants' motivation for putting title in the name of the grantee was to obtain financing that would not be available if the claimant had taken the title. (*Ruelas, supra,* 154 Cal.App.4[th] at p. 342.) The fact that the transferee of title assumes an obligation to pay does not prevent the existence of a resulting trust. (*Novak v. Novak* (1967) ("*Novak*") 249 Cal.App.2d 438-442.)

In *Novak*, although the son and daughter-in-law had legal title to the real property where the father resided, the court held that they were trustees of the legal title for the father because it was understood among the parties that the son and daughter-in-law would reconvey the property back to their father once he made all the mortgage payments. (*Novak, supra,* 249 Cal.App.2d at p. 441.) The father conducted himself in a manner consistent with the belief in his ownership by paying the loan and other property related expenses and never made rental payments to the couple after the loan was repaid. (*Ibid.*)

The current case is similar to "Novak." Although title has always been held by Defendant, the evidence compels the conclusion that Defendant was a trustee of legal title for Plaintiff. At the time of purchase it was not disputed that Defendant would be obtaining bare legal title merely to assist Plaintiff in purchasing the property. There was and is no real dispute as to Plaintiff's 100% ownership interest for the first 5 years. The issue only arose after the alleged refinance in 2000 and the alleged oral agreement whereby Defendant allegedly granted Defendant a 50% interest in the property. Yet, since the purchase of the property in 1995, Plaintiff has been making all payments on the property, including mortgage, insurance, taxes, utilities, improvements, and all other costs associated with ownership. It would seem that had such an agreement existed, Defendant would have been paying half of these costs, would have been living in the unit full time and/or seeking rent from Plaintiff.   Further, Plaintiff himself received $30,000 from the 2000 refinance. The parties' actions are consistent with this court's finding that Plaintiff was the sole owner of the property. Defendant's testimony lacks credibility and does not support a finding in her favor.

A common understanding may be shown by circumstantial evidence, including a parties' statements and conduct. (*Hansford v. Lassar* (1975) 53 Cal.App.3d 364, 373.) The conduct of the parties herein compels a finding in Plaintiff's favor. A resulting trustee has no duty other than to transfer the property to the person entitled. (*Ruelas, supra,* 154 Cal.App.4[th] at p. 342.)Therefore, the court finds a resulting trust in favor of Plaintiff.   Defendant is ordered to transfer 100% legal title to the property located at 121 S. Hope Street, Unit 506, Los Angeles, CA to Plaintiff as his sole and separate property.

–3–

**FRAUD/CONVERSION**

To prevail on a cause of action for fraud, Plaintiff must prove that Defendant misrepresented facts to Defendant with knowledge of their falsity and the intent to defraud. Plaintiff must have justifiably relied on the misrepresentation and as a result incurred damages. (*Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 974.)

Plaintiff contends that Defendant misrepresented the fact that she would convey title to Plaintiff upon payment of the loan or a refinance. Further that Plaintiff relied upon Defendant's promise to convey title to Plaintiff once the loan had been paid off or refinanced in his name. However, the court cannot make a finding on the facts presented that Defendant at the time the agreement was entered into, had the required intent to defraud Plaintiff. It is true that Defendant has refused to convey title to Plaintiff. However, Plaintiff has not shown the requisite intent required for a finding of fraud. This was a familial relationship with many moving parts. The fact that the end result was a refusal of Defendant to turn over title to the property does not fulfill the intent required to prove fraud. As a result, there can be no finding of fraud.

For the same reasons as above, Plaintiff cannot prevail on his cause of action for Conversion.

**HOME EQUITY LINE OF CREDIT**

Defendant obtained a line of credit against the property to which Plaintiff was entitled.   The funds were used for Defendant's sole and separate purposes. As Plaintiff is entitled to a 100% ownership of the property free and clear of any liens, Defendant must be responsible for the payment of the balance on the line of credit.   As the dollar amount is not clear, Defendant shall provide Plaintiff with the most recent statement indicating the amount owing. The amount owed will become part of the judgment against Defendant.   This may be addressed in an ex parte application to amend the Judgment at a later date.

**JUDGEMENT**

Judgment is entered in favor of Plaintiff E. Robert Soracco and against Defendant Patricia Del Carmen Bravo, as follows:

1. The case concerns a property located at 121 South Hope Street, Unit 506 in Los Angeles California;
2. Defendant, the title owner of record of the property, holds the property as a resulting trustee for the benefit of Plaintiff. Legal title to the property is awarded to Plaintiff;
3. Defendant shall, at the request of Plaintiff, transfer title to the property to Plaintiff or his nominee, as requested. Plaintiff shall prepare a deed as to how he or his nominees wish to hold title, and Defendant shall sign and deliver the deed to Plaintiff within 15 days of receipt; and
4. Monetary damages against Defendant in an amount according to proof at an ex parte hearing to amend this judgment to include damages for the balance remaining on the line of credit taken by Defendant.

–4–

**IT IS SO ORDERED.**

Dated: 1/5/18

_____
Hon. Gregory Keosian
Judge of the Superior Court

–5–

# EXHIBIT G



1    GARDNER + ASSOCIATES
     Jennifer Gardner, Esq. (SBN 128026)
2    Yasmin D. Kayiran, Esq. (SBN 246500)
     8560 West Sunset Blvd., 5ᵗʰ Floor
3    Los Angeles, CA 90069
     Telephone: (310) 694-9855
4    Facsimile: (310) 694-9858
5    Email: law@jgardnerassociates.com

6    Attorneys for Plaintiff,
7    E. ROBERT SORACCO

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 19 2018

Sherri R. Carter, Executive Officer/Clerk
By LaTrina Woods, Deputy

RECEIVED
SEP 13 2018
FILING WINDOW

RECEIVED
SEP 14 2018
DEPT. 61

8         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9    **FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT (Unlimited Civil)**

10

11    E. ROBERT SORACCO, and individual,    )    **CASE NO: BC560739**
                                      )
12         Plaintiff,                    )    **AMENDED FINAL JUDGMENT**
13                                       )
   v.                                      )    [Dept. 61, Honorable Gregory Keosian,
14                                       )    Judge Assigned]
15    PATRICIA DEL CARMEN BRAVO, an    )
   individual; and DOES 1 through 10,      )
16    INCLUSIVE,                             )
17         Defendants.                 )
18

19

20        Judgment is entered in favor of Plaintiff E ROBERT SORACCO, an individual ("Plaintiff"),

21    and against Defendant PATRICIA DEL CARMEN BRAVO, an individual ("Defendant"), as

22    follows:

23           1.      The case concerns a property located at 121 South Hope Street, Unit 506, in Los

24               Angeles, California (the "Property");

25          2.      Defendant, the title owner of record of the Property, holds the Property as a resulting

26               trustee for the benefit of Plaintiff. Legal title to the Property is awarded to Plaintiff;

27          3.      Defendant shall, at the request of Plaintiff, transfer title to the Property to Plaintiff or

28               his nominee, as requested. Plaintiff shall prepare a deed as to how he or his

                                                    1

GARDNER + ASSOCIATES
8560 West Sunset Blvd., 5ᵗʰ Floor
Los Angeles, CA 90069
(310) 694-9855

nominees wish to hold title, and Defendant shall sign and deliver the deed to Plaintiff within fifteen (15) days of receipt;

4.    Monetary damages against Defendant in the amount of $119,580.81 (Bank of America May 2018 Lien against the Property minus $3,391.00 in 2017-2018 for insurance and property tax payment made by Defendant);

5.    Reductions in Bank of America's lien (or those of a successor) made through payments by Defendant are to be credits against this Judgment;

6.    Plaintiff shall recover costs in the amount of $4,487.41 against Defendant.

**IT IS SO AMENDED AND ORDERED.**

DATED:     SEP 1 9 2018       GREGORY KEOSIAN

                     HONORABLE GREGORY KEOSIAN
                     JUDGE OF THE LOS ANGELES SUPERIOR COURT

GARDNER + ASSOCIATES
8560 West Sunset Blvd., 5ᵗʰ Floor
Los Angeles, CA 90069
(310) 694-9855

2

**AMENDED FINAL JUDGMENT (BC560739)**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 09/19/18 | | **DEPT. 61** |
| HONORABLE GREGORY KEOSIAN JUDGE | L. WOODS | DEPUTY CLERK |
| HONORABLE JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| H. MARTINEZ, C.A. Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 3:00 pm BC560739 | Plaintiff Counsel | NO APPEARANCES |
| E ROBERT SORACCO VS PATRICIA DEL CARMEN BRAVO | Defendant Counsel | |
| 170.6 MALCOLM H. MACKEY (dft) | | |

**NATURE OF PROCEEDINGS:**

COURT ORDER RE: JUDGMENT;

The Court, after reviewing the Proposed Amended
Final Judgment, enters judgment in favor of plaintiff
E. Robert Soracco and against Defendant Patricia
Del Carmen Bravo, and amends the judgment to include,
Plaintiff shall recover costs in the amount of
$4,487.41 against Defendant, which is signed and
filed this date and incorporated herein by reference
to the Court file.

Pursuant to the Clerk's telephonic communication
with Counsel for Plaintiff this date, a conformed
copy of the Amended Final Judgment will be retrieved
by courier in this department.

Counsel for plaintiff is directed to give notice.

Page   1 of   1   DEPT. 61

MINUTES ENTERED
09/19/18
COUNTY CLERK

## PROOF OF SERVICE

I am employed in Los Angeles County. My business address is 8560 W. Sunset Blvd., 5ᵗʰ Floor, Los Angeles, CA 90069. I am over the age of 18 years and I am not a party to this action. I am readily familiar with the practices of Gardner + Associates, Lawyers, and the postal service to this building for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service as indicated below on the same day in the ordinary course of business.

On August ___, 2018, I caused to be served the foregoing document, bearing the name:

### AMENDED FINAL JUDGMENT

on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope and addressed as follows:

**MALCOLM R. TATOR, ESQ.**
**Law Offices of Malcolm R. Tator**
**2775 N. Ventura Road, Suite 106**
**Oxnard, CA 93036**
**EMAIL: mtator@tatorlaw.com**
**Attorneys for Defendant, Patricia Del Carmen Bravo**

[X]    **BY MAIL:** By placing [ ]original [X] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I deposited such envelope in the mail at Los Angeles, California with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    PERSONAL DELIVERY: By placing [ ]original [ ] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I caused such envelope to be delivered to the addressee.

[ ]    BY FEDERAL EXPRESS/NEXT DAY DELIVERY: By placing [ ]original [ ] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona I caused such envelope to be deposited in the Federal Express box in Los Angeles, California which is regularly maintained by Federal Express, with delivery fees pre-paid and provided for, addressed to the person on whom said document is to be served.

[X ]    **Courtesy Copy** BY ELECTRONIC MAIL (CCP 1010.6(a)): Based on a prior agreement between the parties to accept electronic mail service, I caused the documents described hereinabove to be sent to the electronic mail service addresses of opposing counsel attorneys as indicated above.

[ ]    BY FACSIMILE: I caused said document, along with a signed copy of this Declaration, to be transmitted to a facsimile machine telephone number as last given by said counsel or party in propria persona as noted above.

I declare under penalty of perjury under the laws of State of California that the foregoing is true and correct. Executed this ___ day of September, 2018 at Los Angeles, California.

_____
JENNIFER GARDNER

GARDNER + ASSOCIATES
8560 West Sunset Blvd., 5ᵗʰ Floor
Los Angeles, CA 90069
(310) 694-9855

PROOF OF SERVICE

1

2

## **PROOF OF SERVICE**

3

I, Karla Garcia, declare that I am over the age of 18 years, and I am not a party to this action. I am familiar with serving documents to parties involved in litigation and processing correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service as indicated below on the same day in the ordinary course of business.

4

5

6

On May 6, 2025, I caused to be served the foregoing document, bearing the name on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope and addressed as follows:  SEE ATTACHED MAILING LIST

7

8

[ **X** ] **EDB**: Electronic Drop Box (EDB) Bankruptcy Court, Central District of California.
       **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF).**

9

[  ] BY MAIL: By placing [ ]original [] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona.

10

[  ] PERSONAL DELIVERY:  By placing  [ ]original [ ] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona.  I caused such an envelope to be delivered to the addressee.

11

12

[  ] BY FEDERAL EXPRESS/NEXT DAY DELIVERY: By placing [ ]original [ ] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona I caused such envelope to be deposited in the Federal Express box in Los Angeles, California which is regularly maintained by Federal Express, with delivery fees pre-paid and provided for, addressed to the person on whom said document is to be served.

13

14

15

[  ] BY MESSENGER/COURIER: By placing [ ]original [ ] a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona I caused such envelope to be hand delivered by an employee who is a messenger/courier of _____ .

16

17

[  ] BY FACSIMILE:  I caused said document and a signed copy of this Declaration to be transmitted to a facsimile machine telephone number as last given by said counsel or party in propria persona as noted above.

18

19

Under penalty of perjury under California law, I declare that the foregoing is true and correct.

20

**EXECUTED** this 6th day of May 2025 in Los Angeles, California.

21

*Karla Garcia*

22

Karla Garcia

23

24

25

**MOTION FOR SUMMARY JUDGMENT  - 2:24-BK-16132-DS – ADV#: 2:24-01277-DS**

1

## ATTACHED MAILING LIST OF

2

## MOTION FOR SUMMARY JUDGMENT

3
PLAINTIFF'S STATEMENTS OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW PURSUANT TO 11

4
U.S.C.§523(a)(2)(A); §523(a)(4); §727(a)(4); 523 & 727 *et seq.*

5
IN CASE 2:24-bk-16132-DS

6
**ADV-Proceedings: 2:24-01277-DS**

7
**Petitioner: Patricia Del Carmen Bravo**

8

9
**Elissa Miller (TR)**
GREENSPOON MARDER, LLP
1875 Century Park East, Suite 1900

10
Los Angeles, California 90067
Telephone: (213) 626-2311

11
Email: elissa.miller@gmlaw.com

12

13
**Darren J. Devlin, Esq.**
The Law Offices of Jason C. Tatman, APC
9665 Chesapeake Drive, Suite 365

14
San Diego, CA 92123
Telephone: (844) 252-6972

15
bt@nationwidereconveyance.com

16

17
**Gregory M. Shanfeld**
WADHWANI & SHANFELD, PLC
15233 Ventura Boulevard, Suite 1000

18
Sherman Oaks, California 91403
Telephone: (818) 784-0500

19
Facsimile: (818) 784-0508
Email: greg@wslaw.com

20

21
**Patricia Del Carmen Bravo**
877 Francisco Street Unit 1703
Los Angeles CA 90017-2881

22
Telephone: (213) 822-4757
Email: pdcbravo@hotmail.com

23

24

25